# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| BOMBSHELL ACCESSORIES, INC. ) | |
| ) | |
| Plaintiff, ) | |
| ) | Case No. 1:10-cv-8042 |
| v. ) | |
| ) | Judge Robert M. Dow, Jr. |
| L.A. SILVER, INC., ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Bombshell Accessories, Inc. ("Plaintiff") filed a breach of contract claim against Defendant L.A. Silver, Inc. ("Defendant") alleging that Defendant breached a settlement agreement that the parties entered into in 2010. Before the Court is Defendant's motion [9] to dismiss Plaintiff's complaint for improper venue under Federal Rule of Civil Procedure 12(b)(3), or, alternatively, to transfer the case to the United States District Court for the Central District of California under 28 U.S.C. § 1406(a). For the following reasons, Defendant's motion [9] is denied.

## I. Background[1]

Plaintiff is a New York-based corporation that designs body jewelry and related accessories and sells them at wholesale. Plaintiff also designs and sells "microdermal anchors," which are flat, oblong pieces of metal that are surgically inserted beneath the skin to secure certain types of body jewelry. Plaintiff developed an ornamental microdermal anchor design, called the "Bombshell Design," that it alleges is readily identifiable and distinguishable from

---

[1] For purposes of Defendant's 12(b)(3) motion, the Court assumes as true all allegations set forth in Plaintiff's complaint. See *Nagel v. ADM Investor Servs., Inc.*, 995 F. Supp. 837, 843 (N.D. Ill. 1998). Unless otherwise specified, all citations in this section correspond to Plaintiff's complaint [1].

other microdermal anchors on the market. The Bombshell Design is copyrighted, and Plaintiff has a patent application for the design pending before the U.S. Patent and Trademark Office.

In early 2010, Plaintiff learned that Defendant, a corporation incorporated and principally operated in California, was selling, manufacturing, marketing, distributing, importing, and/or selling a microdermal anchor similar to the Bombshell Design. Plaintiff demanded that Defendant cease and desist its alleged infringement of Bombshell intellectual property, including the Bombshell Design. In an effort to avoid litigation, the parties entered into a valid and binding Settlement Agreement ("the Settlement Agreement"). Section 5(a) of the Settlement Agreement acknowledged Plaintiff's exclusive rights to the Bombshell Design:

> LA Silver recognizes and acknowledges Metal Mafia's [Bombshell's] exclusive worldwide ownership [of] the [Bombshell] Intellectual Property. LA Silver acknowledges and agrees that the [Bombshell] Design and all applications and registrations comprising the [Bombshell] Intellectual Property, whether current or forthcoming, are and shall be valid, enforceable, and owned by [Bombshell].

[1 at ¶ 13.] Sections 1(a) and 1(b) provided that Defendant would "cease all manufacturing, marketing, distributing, importing, and selling of the LAS Design" and "recall or destroy all advertising materials, including website materials, bearing the LAS Design" by September 28, 2010. [*Id.* at ¶ 14] The Settlement Agreement also contained a clause entitled "Governing Law; Jurisdiction, Forum Selection Prevailing Party," which stated that:

> This Agreement shall be governed by and construed in accordance with the laws of the State of Illinois without giving effect to any choice-of-law or conflict-of-law provision or rule that would cause the application of the laws of any jurisdiction other than the State of Illinois. The parties accept and agree that the United States District Court of the Northern District of Illinois located in Chicago, Illinois, *has and shall retain jurisdiction over this Agreement for the resolution of any claims or disputes arising out of or relating to the parties' exercise of their rights and/or obligations under this Agreement * * *.*"

[1-1 at ¶ 7 (emphasis added).]

Plaintiff claims that Defendant began manufacturing, marketing, distributing, importing, and/or selling a new variation of the Bombshell Design in violation of the 2010 Settlement Agreement. Plaintiff claims that it addressed the alleged continued misappropriation with Bombshell via correspondence on November 16, 2010, but states that Defendant denied liability and continued making and selling the anchor.[2] Plaintiff filed a diversity action for breach of contract in this Court. Defendant filed a motion [9] to dismiss the complaint for improper venue under Federal Rule of Civil Procedure 12(b)(3) or, alternatively, to transfer venue of the case to the Central District of California under 28 U.S.C. § 1406(a).

## II. Legal Standard Governing Motions to Dismiss for Improper Venue

Where jurisdiction is founded solely on diversity of citizenship, venue is proper in:

> (1) a judicial district where any defendant resides, if all defendants reside in the same State, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (3) a judicial district in which any defendant is subject to personal jurisdiction at the time the action is commenced, if there is no district in which the action may otherwise be brought.

28 U.S.C. § 1391(a) Subsection (c) of the statute provides that "a defendant that is a corporation shall be deemed to reside in any judicial district in which it is subject to personal jurisdiction at the time the action is commenced." 28 U.S.C. § 1391(c). When a State has multiple districts, "such corporation shall be deemed to reside in any district in that State within which its contacts would be sufficient to subject it to personal jurisdiction if that were a separate State * * *." *Id.*

Rule 12(b)(3) provides that a party may move to dismiss a case that a plaintiff filed in an improper venue. FED. R. CIV. P. 12(b)(3). The plaintiff bears the burden of establishing proper venue. See *Int'l Travelers Cheque Co. v. BankAmerica Corp.*, 660 F.2d 215, 222 (7th Cir. 1981

---

[2] Plaintiff alleges that the parties also entered into a settlement agreement on July 24, 2007, in which Defendant agreed to discontinue sales of jewelry infringing Plaintiff's intellectual property rights and pay Plaintiff damages. However, Plaintiff's breach of contract claim is based only on the 2010 Settlement Agreement.

(citing *Grantham v. Challenge-Cook Bros., Inc. et al.,* 420 F.2d 1182, 1184 (7th Cir. 1969)). The burden is met by making a *prima facie* showing that venue is proper. See *Sanderson v. Spectrum Labs, Inc.*, 2000 WL 1909678, at *3 (7th Cir. Dec. 29, 2000); *Bell v. Woodward Governor Co.*, 2004 WL 1498145, at *1 (N.D. Ill. Jul. 2, 2004). A court deciding a Rule 12(b)(3) motion must take the allegations in the complaint as true (unless contradicted by affidavit) and draw all reasonable inferences in favor of the plaintiff. See *Nagel v. ADM Investor Servs., Inc.*, 995 F. Supp. 837, 843 (N.D. Ill. 1998). The court will resolve all factual disputes in the plaintiff's favor. See *Nelson v. Park Indus., Inc.,* 717 F.2d 1120, 1123 (7th Cir.1983).

**III.    Analysis**

Plaintiff alleges in its complaint that venue is proper in this forum because the parties agreed, in a forum selection clause in the Settlement Agreement, that this Court would have jurisdiction over any dispute arising out of the Settlement Agreement. Defendant concedes that it the Settlement Agreement contained a forum selection clause specifying that "the Northern District of Illinois * * * shall retain jurisdiction over this Agreement for the resolution of any claims or disputes arising out of or relating to the parties' exercise of their rights and/or obligations under this Agreement * * *." [1-1 at ¶ 7.] Moreover, Defendant acknowledges that the Settlement Agreement's forum selection clause is presumptively valid.[3] See *M/S Bremen v. Zapata Off-Shore Company*, 407 U.S. 1, 10 (1972); *Muzumdar v. Wellness Int'l Network, Ltd.*, 438 F.3d 759, 761 (7th Cir. 2006) (holding that "under either federal or Illinois law, forum selection clauses are valid and enforceable") (citing *IFC Credit Corp. v. Aliano Bros. Gen. Contractors, Inc.*, 437 F.3d 606, 610 (7th Cir. 2006). However, Defendant argues that the

---

[3] Federal law applies to the instant motion, as the parties appear to concede. See *Northwestern National*, 916 F.2d at 374 (stating that "[p]robably, * * * the parties before us are correct to concede that the issue of [forum-selection] validity is one of federal law, though we need not decide this, since litigants are, within limits not exceeded here, permitted to designate what law shall control their case").

4

presumption is rebutted in this instance because application of the clause would be "unreasonable or unjust." *Id.* at 15. Therefore, Defendant argues, the case should be dismissed for improper venue pursuant to Rule 12(b)(3)[4] or, alternatively, should be transferred to the Central District of California pursuant to 28 U.S.C. § 1406(a).

Historically, forum selection clauses were frowned upon by federal and state courts because they were viewed as "contrary to public policy" or as "oust[ing] the jurisdiction of the court." See *Bremen*, 407 U.S. at 9 (internal quotation marks omitted). The Supreme Court in *Bremen* dismantled those views "in the light of present-day commercial realities and expanding international trade." *Id.* at 15. The Supreme Court ruled that courts should accord forum selection clauses the same presumptive validity to which other contractual provisions are entitled, so long as the clauses were freely negotiated in a private agreement. *Id.* at 13-15; see also *Northwestern Nat'l*, 916 F.2d at 378 (holding that "the only good reason for treating a forum selection clause differently from any other contract (specifically, from the contract in which the clause appears) is the possibility of adverse effects on third parties. Where that possibility is slight, the clause should be treated like any other contract"); *Automobile Mechanics Local 701 Welfare and Pension Funds v. Vanguard Car Rental*, 502 F.3d 740, 746 (7th Cir. 2007) (holding that "[v]enue is primarily a matter of convenience of litigants and witnesses. As a result, an objection to venue can be waived or forfeited. * * * Forum selection clauses [may waive improper venue as a ground of dismissal]; they represent an *ex ante* determination by the parties themselves of the place that will be the most convenient for any litigation that may come along" (internal quotation marks and citations omitted)); *IFC Credit Corp. v. Aliano Bros. General*

---

[4] The Seventh Circuit applies the majority rule that a motion seeking dismissal based on a forum selection clause should be conceptualized as an objection to venue, and thus raised under Rule 12(b)(3), rather than as a failure to state a claim under Rule 12(b)(6). See *Automobile Mechanics Local 701 Welfare and Pensions Fund v. Vanguard Car Rental USA, Inc.*, 502 F.3d 740, 746 (7th Cir. 2007) (citing *Continental Ins. Co. v. M/V Orsula*, 354 F.3d 603, 606-07 (7th Cir. 2003)).

*Contractors, Inc.*, 437 F.3d 606, 609-10 (7th Cir. 2006) (recapitulating the Supreme Court's approach to treating a forum selection clause like any other contractual provision, and hence deeming it a waiver of objections to personal jurisdiction or venue unless the clause is subject to fraud, mistake, or another infirmity that would justify a court's finding that a contract is unenforceable)). Therefore, federal courts generally enforce parties' agreements to litigate in a specified forum. See *Northwestern Nat'l*, 916 F.2d at 375.

A forum selection clause's presumption of validity may be rebutted upon a showing that the clause is "unreasonable and unjust, or that the clause [i]s invalid for such reasons as fraud or overreaching." *Bremen*, 407 U.S. at 15. Expounding on the standard articulated in *Bremen* and subsequent Supreme Court cases, the Seventh Circuit has ruled that:

> a forum selection clause is presumptively valid and enforceable unless (1) "[its] incorporation into the contract was the result of fraud, undue influence, or overweening bargaining power; (2) the selected forum is so gravely difficult and inconvenient that [the complaining party] will for all practical purposes be deprived of its day in court; or (3) [its] enforcement * * * would contravene a strong public policy of the forum in which the suit is brought, declared by statute or judicial decision.

*AAR Int'l, Inc. v. Nimelius Enters., S.A.*, 250 F.3d 510, 525 (7th Cir. 2001) (quoting *Bonny v. Society of Lloyd's*, 3 F.3d 156, 160 (7th Cir. 1993); see also *Northwestern Nat'l*, 916 F.2d at 378 (holding that a forum selection clause may be unenforceable if the forum selected would result in "inconvenience to some third party * * * or to the judicial system itself").

The party seeking to challenge the enforceability of the clause bears the "heavy burden" of "show[ing] that trial in the contractual forum will be so gravely difficult and inconvenient that he will for all practical purposes be deprived of his day in court."[5] *Bremen*, 407 U.S. at 18, 19;

---

[5] Defendant argues that, in general, a plaintiff seeking to oppose a Rule 12(b)(3) motion to dismiss a case for improper venue bears the burden of showing that venue has been properly placed. However, when, as in this case, a plaintiff asserts that venue is proper by virtue of a forum selection clause in a contract between the parties, the plaintiff has made a *prima facie* showing of validity, as the clause is

6

see also *Northwestern Nat'l*, 916 F.2d 372. Assignment of that burden flows logically from the fact that by signing a contract containing a forum selection clause, a party waives its right to assert inconvenience as a ground for transferring venue. See *Northwestern Nat'l*, 916 F.2d at 378 (citing *Heller Financial, Inc. v. Midwhey Powder Co., Inc.*, 883 F.2d 1286, 1293 (7th Cir. 1989), for the proposition that "the signing of a valid forum selection clause is a waiver of the right to move for a change of venue on the ground of inconvenience to the moving party," and that *forum non conveniens* therefore "may not be used to make an end run around" the clause). "To invalidate the clause, defendants must not merely show a fraudulent transaction, but fraud that goes to the selection of the forum." *Trio Video, LLC v. NTL Capital, LLC*, 2007 WL 2230036, at *3 N.D. Ill. Jul. 27, 2007) (citing *Rosenthal & Co. v. Rosario*, 1987 WL 13606, at *4 (N.D. Ill. Jul. 9, 1987)).

Here, Defendant argues that the forum selection clause included in the Settlement Agreement is unenforceable because (a) it was not freely negotiated, (b) it is inconvenient, and (c) it is permissive rather than mandatory.[6] The Court addresses each argument in turn below.

---

presumptively valid. *Bremen*, 407 U.S. at 10. The burden then falls on the defendant to rebut the presumption of validity through a "strong showing" that the enforcement of the clause would be unreasonable or unjust. *Id.* at 15.

[6] As stated above, the Seventh Circuit has held that the presumption of validity attaching to a forum selection clause may be rebutted upon a showing of (1) fraud, (2) grave inconvenience, or (3) frustration of public policy. *AAR Int'l, Inc. v. Nimelias Enters. S.A.*, 250 F.3d 510, 525 (7th Cir. 2001) (holding that a forum selection clause may be deemed invalid if "[its] enforcement * * * would contravene a strong public policy of the forum in which the suit is brought, declared by statute or judicial decision" (quoting *Bonny*, 3 F.3d at 160)). Defendant does not assert a rebuttal argument based on the third factor.

### A. Whether Incorporation of the Forum Selection Fraud into the Settlement Agreement Was the Result of Fraud, Undue Influence, or Overweening Bargaining Power

Defendant argues that the forum selection clause is unreasonable or unjust because it was not freely negotiated. Defendant attached to its motion to dismiss an affidavit from Haig Mirhanian, L.A. Silver's President/CEO ("Mirhanian Affidavit"), which states that:

> On the evening of Friday, August 20, 2010, I was advised that one of the attorneys for plaintiff, James Saul, had threatened to file a patent infringement action against defendant in the U.S. District for the Southern District of New York if I did not sign a proposed settlement agreement * * * as drafted by [Plaintiff's counsel] by 12 pm EST on Monday, August 23, 2010. While I did not like and had protested the forum selection clause contained in the agreement, I felt I had no choice but to sign the agreement in view of the plaintiff's threat of renewed litigation.

[9-1 at ¶ 4.] As the affidavit implies, the forum selection clause was evident on the face of the Settlement Agreement; it was not written in such fine print or buried boilerplate as to escape Defendant's notice. See *Trio Video*, 2007 WL 2230036, at *3 (concluding that a forum selection clause was not the result of fraud where "nothing about the clause itself * * * indicates fraud. The clause is the same size font as the rest of the terms and conditions of the [contract], and the clause is located only a few lines above the plaintiff's signature"). Moreover, insofar as the very nature of the Settlement Agreement concerned the potential for litigation between the parties, Defendant could not reasonably be heard to claim that the presence of the forum selection clause in the Agreement was a surprise.

Plaintiff asserts, and Defendant does not dispute, that the parties negotiated the Settlement Agreement throughout the weekend, and no change was made (nor does Defendant allege that any was suggested) to the forum selection clause during the negotiation period. Mirhanian was represented by counsel, and Defendant does not suggest that either Mirhanian or counsel were so unsophisticated or inexperienced as to have been incapable of arm's length

8

negotiation.[7] Indeed, the affidavit and allegations indicate that Defendant was actively involved in negotiating the Agreement. Defendant received consideration for the bargain in the form of Defendant's intellectual property rights, a covenant not-to-sue with respect to certain jewelry designs, and the certainty that such disputes would be "handled in the neutral, more centrally located forum of Chicago." [14, at 6.]

Defendant does not argue that any difficulty that might inure in litigating in this forum was not foreseeable at the time of contracting. Indeed, because "it can be said with reasonable assurance that at the time they entered the contract, the parties to a freely negotiated private * * * commercial agreement contemplated the claimed inconvenience, it is difficult to see why any such claim of inconvenience should be heard to render the forum clause unenforceable." *Bremen*, 490 U.S. at 16. In short, Defendant fails to allege facts sufficient to meet its "heavy burden" in advancing a charge that the clause was obtained by fraud or mistake or was otherwise not freely negotiated. See *Northwestern Nat'l*, 916 F.2d at 375. It is unclear whether the forum selection clause may have been a potential deal-breaker, but even if it was, there is no plausible argument for fraud, undue influence, or anything of that nature. In fact, Defendant had a choice: compromise or face renewed litigation.

### B. Whether the Selected Forum Is Gravely Difficult and Inconvenient to Defendant, Third Parties, or the Judicial System

Defendant next argues that the clause would require Defendant to litigate in "a remote alien forum" [9, at 3 (quoting *Bremen*, 407 U.S. at 17)] and that such a requirement would be inordinately expensive for Defendant. Plaintiff argues that the Northern District of Illinois does not qualify as a "remote alien forum" as understood by the Court in *Bremen*, where a defendant

---

[7] Plaintiff also points out that that the parties had entered into previous settlement agreements concerning alleged infringement, and that Defendant therefore cannot allege that it was unfamiliar with the settlement or negotiation process.

German corporation sought to dismiss the complaint of the plaintiff U.S. corporation, filed in District Court in Florida, on the ground that a forum selection clause mandated that the suit be brought in London. *Bremen*, 407 U.S. at 1.

Assuming for the sake of argument that this Court is the type of "remote alien forum" described by *Bremen*, Defendant's complaints, standing alone, hardly amount to the "strong showing" required to set aside the clause. *Bremen*, 407 U.S. at 15. As Plaintiff notes, the "remoteness" of the forum to Defendant in this case is not nearly so extreme as that contemplated in *Bremen*. See *Bremen*, 407 U.S. at 1. Indeed, courts in this district have upheld the enforceability of forum selection clauses when the remoteness of the forum was far more onerous to the party seeking dismissal. See, *e.g.*, *Karlberg European Tanspa, Inc. v. JK-Josef Kratz*, 618 F. Supp. 344, 348 (N.D. Ill. 1985) (concluding that litigation in West Germany was not unreasonable even though most witnesses and evidence were located in this forum and discovery was more limited in West German courts than here). Defendant has not pointed to any evidence suggesting that it would not be "treated fairly [or] have an adequate chance of presenting [its] case" or otherwise would be deprived of its day in court if litigation proceeds in this forum. *Id.* And, although litigating in Illinois may be more costly to Defendant than litigating in California, that expense alone will not render the clause unenforceable. See *Paper Express, Ltd. v. Pfankuch Maschinen GmbH*, 972 F.2d 753, 758 (7th Cir. 1992) (noting that "additional expense does not necessarily invalidate a forum-selection clause since Paper Express was presumably compensated for this burden by way of the consideration it received under the contract"). Most significantly, as stated above, Defendant, in signing the Settlement Agreement, waived its right to object to venue on the ground of inconvenience. See *Northwestern Nat'l*, 916 F.2d at 375; see also *Pennsylvania House, Inc. v. Barrett*, 760 F. Supp. 439, 448 n.13 (M.D. Pa.

1991) (finding that "[m]uch of [defendant's] argument focuses on her lack of contacts with [the forum], but if the parties have agreed that actions will be litigated in a designated forum, the defendant's contacts, or lack thereof, with the forum state are irrelevant. The focus is, instead, on the reasonableness and enforceability of the clause").

Defendant also argues that litigating in the Northern District of Illinois is likely to inconvenience the witnesses whom it may call at trial. A court may find an otherwise valid forum selection clause unenforceable if litigating in the selected forum would cause "inconvenience to some third party * * * or to the judicial system itself." *Northwestern Nat'l*, 916 F.2d at 378; see also *IFC Credit Corp.*, 437 F.3d at 613 (holding that although a party that has agreed to a forum selection clause has waived its own right to assert inconvenience as a basis for litigating in a different forum, the party cannot "waive rights of third parties, or the interest of the federal judiciary in the orderly allocation of judicial business"). However, a defendant must allege more than the mere chance of inconvenience for third parties. See *Northwestern Nat'l*, 916 F.2d at 376 (holding that where "the possibility of adverse effects on third parties * * * is slight, the clause should be treated like any other contract"). And, if a court's refusal to enforce the forum selection clause would simply shift the burden borne by one party's witnesses to another party's witnesses, then third-party inconvenience should play no role in the court's decision as to the enforceability of the clause. See *Heller*, 883 F.2d at 1293 (upholding enforceability of a forum selection clause where transferring the case to a forum other than the one specified in the contract would be more convenient for one party's witnesses, but only at the expense of witnesses for the opposing party).

Regardless of whether the litigation proceeds in the Northern District of Illinois or the Central District of California, the likelihood of inconveniencing at least some third-party

11

witnesses is all but certain. The Court acknowledges that most of Defendant's potential fact and expert witnesses reside in California. However, the Court is also cognizant of the fact that most of Plaintiff's witnesses reside in New York. In view of the bicoastal nature of this suit, the Court finds persuasive Plaintiff's assertion that "Chicago was selected as a compromise forum by both parties, regardless of their respective contacts" [14 at 7]. Accordingly, the Court does not find the forum selection clause unenforceable on grounds of inconvenience to witnesses. See *Heller Fin.*, 883 F.2d at 1293.

As for inconvenience to the judicial system, Defendant has not made a strong showing that courts in the Central District of California are more efficient than those in the Northern District of Illinois. The Court is convinced that the judicial system's orderly disposition of business will not measurably shift one way or the other depending upon where this case lands. Thus, inconvenience to the judicial system does not warrant rendering the forum selection clause unenforceable.

### C. Whether Interpreting the Forum Selection Clause as Permissive Rather than Mandatory Renders Venue in this Forum Improper

Defendant's final argument is that, "to be enforceable against a foreign defendant, * * * a forum selection clause must contain language that clearly designates the forum chosen by the plaintiff as 'exclusive.'" [9, at 3.] Defendant acknowledges that the clause "endows this Court with *in personam* jurisdiction – by waiving defendant's objection thereto." [9, at 7.] However, Defendant states that because the clause does not so much as mention venue, let alone mandate it in this Court exclusively, the clause is permissive rather than mandatory. Accordingly, Defendant concludes, the clause is unenforceable.

Defendant relies heavily on *Paper Express, Ltd. v. Pfankuch Maschinen GmbH*, 972 F.2d 753 (7th Cir. 1992), in support of its argument. In *Paper Express*, the plaintiff – an Illinois

company – filed a suit against the defendant – a German company – in the Northern District of Illinois, alleging that equipment it ordered from the defendant had malfunctioned. 972 F.2d at 754-55. The defendant filed a counterclaim in the Northern District of Illinois, as well as a Rule 12(b)(3) motion to dismiss. *Id.* at 755. The defendant argued that the parties had signed a purchase order that stated: "Warranty: 6 months according to the rules of VDMA and ZVEI." *Id.* at 754. The VDMA, which stands for Verband Deutscher Maschinen-und Anlagenbau e.V., is an association of German machine manufacturers that promulgates standardized commercial rules. *Id.* One such rule is that the supplier's principal place of business must be the forum for resolving contractual disputes. *Id.* In *Paper Express*, the supplier's principal place of business was Ahrensburg, Germany. *Id.* at 754-55. The district court held that the purchase order incorporated as a clause of the agreement the VDMA's forum selection rule, and that venue therefore was proper only in Germany; the court granted the defendant's motion to dismiss. *Id.* at 755. The Seventh Circuit agreed with the district court that reference to the VDMA rules constituted a mandatory forum selection clause that required the litigation to be brought in Germany. *Id.* at 756.

Defendant places great emphasis on the Seventh Circuit's statement in *Paper Express* that "where venue is specified with mandatory or obligatory language, the clause will be enforced; where only jurisdiction is specified, the clause will generally not be enforced unless there is some further language indicating the parties' intent to make venue exclusive." *Id.* at 757. Defendant argues that because the forum selection clause at issue here does not explicitly state that venue is proper exclusively in this Court, then (1) the clause is permissive, not mandatory, and (2) the clause therefore is unenforceable. However, even if the Court reads the clause at issue here as permissive, it fails to see how Defendant's second argument follows. (Indeed, as

13

Plaintiff points out, "[i]f the forum selection clause is 'permissive,' as indeed LA Silver admits it is, then is Bombshell's filing suit before this Court not 'permitted'?" [14, at 11.])

The language upon which Defendant relies in *Paper Express* must be read to hew closely to the facts of the case, and, of course, in view of clearly established Supreme Court law on forum selection clauses and Congressionally enacted venue statutes. *Paper Express* concerned an international business contract specifying an international forum. 972 F.2d at 754. As the Supreme Court stated in *Bremen*, international business disputes raise special considerations in the context of considering enforceability of forum selection clauses. *Bremen*, 407 U.S. at 17-18. Moreover, in *Paper Express*, the plaintiff chose to file suit in a venue other than the one identified by incorporation in the underlying contract. 972, F.2d at 754.[8] Here, by contrast, Plaintiff chose to file suit in the forum identified in the Settlement Agreement to which Defendant agreed (thereby waiving any objections as to inconvenience or lack of contacts).

Factual distinctions aside, Defendant's interpretation of *Paper Express* runs afoul of clearly established Supreme Court law and Seventh Circuit precedent, which hold that a forum selection clause is enforceable unless it is found to be unreasonable or unjust. See *Bremen*, 407 U.S. at 15, 18; *AAR Int'l*, 250 F.3d at 525. Nowhere did the Supreme Court in *Bremen* suggest a third ground of unenforceability – beyond unreasonableness or unjustness – namely, the absence of an explicit reference to exclusive venue. See, generally, *Bremen*, 407 U.S. 1. Nor can *Paper Express* be read to indicate that venue is improper if a forum selection clause does not mandate it

---

[8] Defendants cite to numerous other cases in which, like *Paper Express*, the plaintiff filed suit in a forum *other* than that set forth in the forum selection clause, the defendant then sought dismissal for improper venue, and the plaintiff opposed the motion on the ground that the clause was unenforceable. See *Docksider, Ltd. v. Sea Tech., Ltd.*, 875 F.2d 762 (9th Cir. 1989); *Doe v. Cultural Care, Inc.*, 2010 WL 3075711 (N.D. Ill. August 3, 2010); *Utah Pizza Serv., Inc v. Heigel*, 784 F. Supp. 835 (D. Utah 1992); *Parker v. Hostetler*, 2008 WL 346007 (N.D. Ind. Feb. 6, 2008). Here, because the two parties agreed to the forum selection clause, negotiated its inclusion and have language that manifests their intent to proceed in the Northern District of Illinois, even if the clause was found to be solely permissive, this Court would not grant Defendant's motion to dismiss on grounds of improper venue.

exclusively when Congress has established that "[f]or purposes of venue * * *, a defendant that is a corporation shall be deemed to reside in any judicial district in which it is subject to personal jurisdiction at the time the action is commenced." 28 U.S.C. § 1391(c). Here, Defendant concedes that the forum selection clause endows this Court with personal jurisdiction over the parties. And, for the reasons stated above, when it signed the Settlement Agreement, Defendant waived any objection to personal jurisdiction that it may otherwise have asserted. See *Automobile Mechanics Local 701*, 502 F.3d at 746. Defendant therefore is subject to personal jurisdiction in this Court and shall be deemed to reside here for venue purposes. Venus is thus proper under § 1391(c). Defendant's Rule 12(b)(3) motion is denied.

### D. Defendant's Alternative Motion to Transfer the Case

Defendant argues that if the Court declines to dismiss the case for improper venue pursuant to Rule 12(b)(3), it should transfer the case to the Central District of California pursuant to 28 U.S.C. § 1406(a). Section 1406(a) provides that "[t]he district court of a district in which is filed *a case laying venue in the wrong division or district* shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." 28 U.S.C. § 1406(a) (emphasis added); *Hapaniewski v. City of Chicago Heights*, 883 F.2d 576, 579 (7th Cir. 1989).

As set forth above, the Court concludes that venue in this forum is proper. The threshold requirement for dismissal under § 1406(a) therefore has not been met. In addition, Defendant has not made a compelling argument that the interests of justice would warrant transfer.

The Seventh Circuit instructs that "[f]actors traditionally considered in an 'interest of justice' analysis relate to the efficient administration of the court system." *Coffey v. Van Dorn Iron Works*, 796 F.2d 217, 221 (7th Cir. 1986). Under § 1406(a), the interest of justice does not

15

focus on the interest of the individual parties but on the efficient administration of the court system. *Robinson v. Town of Madison,* 752 F. Supp. 842, 847 (N.D. Ill. 1990). According to federal case management statistics, the median time from filing to disposition in the Central District of California is 5.8 months, compared to 6.2 months in the Northern District of Illinois. Although the Northern District of Illinois has roughly twice as high a percentage of cases that are more than three years old, the Court is not persuaded that the Central District of California would be so much more efficient as to warrant transfer.[9] The Court therefore denies Defendant's alternative request to transfer this case to the Central District of California under §1406(a).

The Court notes that there is some question as to whether Defendant may hereafter seek to transfer this case on the ground of *forum non conveniens* under § 1404(a). Plaintiff relies on *Northwestern National*, 916 F.2d at 378 (citing *Heller*, 883 F.2d at 1293), for the proposition that a valid forum selection clause precludes a motion to transfer based on *forum non conveniens*. However, the Seventh Circuit more recently has suggested that it is an open question in this circuit whether a § 1404(a) transfer is available when a forum selection clause is permissive rather than mandatory. See *AAR Int'l, Inc. v. Nimelias Enterprises, S.A.*, 250 F.3d 510, 525 (7th Cir. 2001) (noting that "at least one circuit has held that the traditional *forum non conveniens* analysis (rather than the stricter scrutiny required by *Bremen*) applies in cases involving permissive forums election clauses" but declining to adopt that holding where it deemed the clause in question to be mandatory rather than permissive (citing *Blanco v. Blanco Industiral de Venezuela, S.A.*, 997 F.2d 974, 979-80 (2d Cir. 1993)). Of course, even if Defendant seeks to transfer venue under § 1404(a), it will have to argue around the Settlement Agreement's forum selection clause. "The presence of a forum-selection clause such as the parties entered into in

---

[9] Plaintiff argues, and Defendant concedes, that no other litigation involving both parties and/or the Bombshell Design is currently pending in the Central District of California, so judicial efficiency is not affected by the possibility of consolidating related suits.

16

this case will be a significant factor that figures centrally in the district court's calculus [in assessing a §1404(a) motion to transfer]. * * * The flexible and individualized analysis Congress prescribed in § 1404(a) thus encompasses consideration of the parties private expression of their venue preferences." *Stewart Organization, Inc. v. Ricoh Corp.*, 487 U.S. 22, 29-30 (1988). In that analysis, a "forum selection clause, which represents the parties' agreement as to the most proper forum, should receive neither dispositive consideration * * * nor no consideration * * * but rather the consideration for which Congress provided in § 1404(a)." *Id.* at 31.

## IV. Conclusion

For the foregoing reasons, Defendant's motion to dismiss, or in the alternative, transfer [9] is respectfully denied.[10]

Dated: August 16, 2011

_____
Robert M. Dow, Jr.
United States District Judge

---

[10] In its response to Defendant's motion to dismiss, Plaintiff asks that Defendant be ordered to pay fees, expenses, and costs incurred in its defense of Defendant's motion to dismiss [13, at 12-13], referencing Section 7 of the Agreement. Section 7 provides in relevant part that "[t]he prevailing party in any action sought to enforce the terms and conditions of this Agreement shall be permitted to petition the Court and shall be entitled to recovery of its reasonable attorney fees, expert fees, and costs incurred as a result of such action." The Court denies Plaintiff's request at this time without prejudice to the prevailing party in this litigation submitting an appropriate petition for fees and costs at a later stage of the litigation.